# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### FEBRUARY 1998 SESSION



FILED

May 27, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9704-CC-00164 |
| | ) | |
| vs. | ) | Coffee County |
| | ) | |
| VIRGINIA AILENE GANN, | ) | Hon. Gerald L. Ewell, Sr., Judge |
| | ) | |
| Appellant. | ) | (DUI - 2d, Evading Arrest) |

FOR THE APPELLANT:

**VICKIE FRYE-FOWLKES** (at trial)
Attorney at Law
P.O. Box 247
Winchester, TN 37398

**ROBERT S. PETERS** (on appeal)
Attorney at Law
100 First Ave., S.W.
Winchester, TN 37398

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**KAREN M. YACUZZO**
Assistant Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN 37243-0493

**C. MICHAEL LAYNE**
District Attorney General

**STEPHEN E. WEITZMAN**
Asst. District Attorney General
P.O. Box 147
Manchester, TN 37349-0147

AFFIRMED

OPINION FILED:_____

**CURWOOD WITT, JUDGE**

## OPINION

The defendant, Virginia Ailene Gann, appeals her convictions of second offense driving under the influence and evading arrest.[1] Her convictions resulted from a jury trial in the Coffee County Circuit Court. The trial court sentenced her to serve eleven months and 29 days for driving under the influence, with 180 days of incarceration followed by probation, and two years of incarceration for evading arrest. Concurrent sentences were imposed. In this direct appeal, Gann contends the convicting evidence is insufficient to support findings of guilt beyond a reasonable doubt and that her sentences are excessive. Following this court's review of the record and the briefs of the parties, we affirm the judgment of the trial court.

Gann's convictions stem from events occurring during the early morning hours of October 28, 1995 as she drove the city streets of Tullahoma after an evening of socializing with friends in a restaurant and a bar and drinking mixed alcoholic beverages.

At trial, Sergeant Joe Alvarez of the Tullahoma Police Department testified that at approximately 3:00 a.m., he was directing traffic around an accident scene. He saw a vehicle approach with its parking lights on but not its headlights. The right blinker was operating, and the vehicle was traveling in an erratic manner above the posted speed limit of 30 miles per hour. The vehicle nearly hit a parked patrol car, but it swerved and avoided a collision. Using his flashlight, Alvarez motioned for the vehicle to pull over. Gann, the driver of the car, pulled into the oncoming lane and stopped. Sergeant Alvarez, who was dressed in his police uniform and a blue windbreaker with police insignia, motioned for Gann to roll down her window. She fumbled and eventually rolled down the window. Gann refused,

_____

[1] Gann was also convicted of violation of the implied consent law. She has not appealed this conviction.

**2**

however, to get out of the car despite Sergeant Alvarez's multiple requests. Using profanity, Gann informed the officer she was not going anywhere but home. Gann's speech was slurred. Alvarez noticed the smell of an alcoholic beverage on her breath and clothes. He reached into the car and attempted to turn it off but was only able to get it into the parking gear. The defendant then put the car in motion, bumping Alvarez's knee as she drove from the scene.

Officer Kerry Hayworth witnessed the defendant's erratic driving and her exchange with Sergeant Alvarez. Hayworth was able to hear part of Alvarez's conversation with the defendant, including Alvarez's multiple requests that the defendant get out of her car and her refusal to do so. As the defendant drove away from Alvarez "in a fast direction," she ran a red light. Hayworth ran to his patrol car and followed her with blue lights and siren operating. Hayworth pursued her through two turns and into an alley. After stopping in the alley for 30 to 40 seconds, Gann pulled out into another street. A county constable, Mike Fowler, was waiting on the street to intercept Gann, and she stopped her vehicle shortly thereafter. The entire distance from the wreck scene to the site of apprehension was approximately half a mile.

Officer Hayworth yelled for the defendant to get out of her car. For about two minutes, he asked her repeatedly to unlock and open her door. Gann appeared to be trying to unlock her door, and finally Hayworth told her to roll down the window. Gann complied, and Hayworth reached in and unlocked the door. Gann smelled of alcohol. Sergeant Allison, who knew the defendant, arrived on the scene and was able to coax her from the vehicle. When she came out of the car, Gann was unsteady on her feet and leaned on the car door for support. Hayworth did not administer field sobriety tests for fear Gann might injure herself.

3

Hayworth transported Gann to the police station, where she refused to take an intoximeter test. Hayworth did not recall Gann making any complaints about her medical condition while she was in his patrol vehicle. He described her degree of intoxication as "strong."

Officer Hugh Vickers was on duty in the jail on October 28, 1995. He did the intake of the defendant. She did not at that time complain of any medical conditions that needed attention. She had some medicine with her, which she later requested. The defendant was not given her medication because jail policy is not to allow prisoners who have been drinking to have any medication for their own safety.

Constable Mike Fowler assisted Officer Hayworth in pursuit of the defendant. He generally corroborated Hayworth's testimony. He described the defendant as mad, uncooperative and strongly impaired. The constable opined that the defendant should not have been driving. He noticed her speech was slurred. He conceded it was possible that someone who was sick could be unable to stand or would have problems walking.

Officer Johnny Gore was on duty at the Tullahoma Police Department as the public service officer on the night of the defendant's arrest. He heard about the incident on the radio. Realizing the pursuit was taking place nearby, he ran outside and witnessed the defendant making an erratic turn into the wrong lane of traffic.

Sergeant Rodney Banks witnessed Gann's refusal to perform the intoximeter test. He described her as "very intoxicated." He said the defendant was cooperative "for the condition she was in" and wanted to understand everything, but

4

it was hard to explain things to her.

The state also introduced documentary exhibits containing the defendant's signature on the jail intake form and a document signed on a later date. In the former, the defendant's signature is much less legible than the latter.

The defendant took the stand and detailed her many physical ailments. She has a history of heart surgery and chest pains. She was having chest pains on October 27, 1995, but she worked all day as a nurse's aide. That evening, a friend visited Gann. The defendant drank one mixed drink containing vodka and grapefruit juice with her friend. Earlier in the day, Gann had taken Cardizem, which is a blood pressure medication, a coated aspirin and a diuretic. Apparently, she also took nitroglycerin for chest pains while at home that evening. The defendant and her friend went to a restaurant to see other friends, and Gann had a sandwich and a second vodka and grapefruit juice cocktail. Around 10:00 p.m., the defendant and her friend went to The Office Lounge. The defendant testified she drank only orange juice from this point forward. The defendant became sick and took nitroglycerin. Later, she took her friend home and returned to The Office.

The defendant talked with Detective Holder after she returned to The Office. The detective had responded because of vandalism that had taken place earlier in the evening. Gann denied that Detective Holder said anything to her about her state of intoxication.

The defendant left The Office around 2:00 or 2:30 a.m., but she was so sick that she sat in her car for 15 to 20 minutes. She had taken a "nitrate." As the defendant attempted to make her way home, she came upon the wreck and

5

Officer Alvarez. She testified she thought Alvarez was directing her to go around, so she drove over to the left side of the road. She saw Alvarez, whom she was not sure was a police officer, saying something to her. She thought he was telling her to go ahead. She heard someone yell "hey" but she thought this commotion was related to the wreck scene. After Gann left the scene, she saw blue lights but did not think they were for her. She pulled into an alley to let the police vehicle pass. When she realized the blue lights were for her, she decided to go to a well lighted area because she had heard of women in Nashville and other places being stopped by police impostors using blue lights. Gann claimed she was not trying to elude the officers.

According to Gann, the officers pulled her out of her car. She went limp and felt as if she would faint. The officers did not inquire whether she had been drinking. At the jail, Gann gave the officials her nitroglycerin and informed them she had been taking it for chest pains and nausea. She asked for some nitroglycerin but was not given any. She explained that her signature on the jail intake form was difficult to read because she was sick and uncoordinated.

The defendant explained her conduct with the officers as a misunderstanding of the situation. She claimed she was not drunk and had only two drinks all evening. She has had alcohol on only a few occasions since having heart surgery. With reference to her headlights, she thought they were turned on. She did not recall speaking with Detective Holder at The Office about her alcohol consumption and whether she should be out on the roads. She explained that her difficulty in unlocking the car doors resulted because she rarely locks them. She decided not to submit to an intoximeter test based upon her mistrust of the reliability of such test results from past experience.

6

Steve Ashley, the manager of The Office, testified for the defense. He served the defendant orange juice but no alcohol on the evening in question. Ashley remembered serving the defendant beer in the past but had never seen her drink liquor. He did not see her add liquor to her orange juice, but he did not watch her constantly. He recalled that Gann was not feeling well and had taken some nitroglycerin.

Melissa Mantooth testified she was at The Office on October 27, where she talked with the defendant. She recalled that the defendant did not feel well and was taking nitroglycerin. She did not see the defendant consume any alcohol. Mantooth opined that the defendant did not appear to be intoxicated and did not smell of alcohol.

Harold Ashley, a family friend of the defendant, testified that the defendant was feeling "pretty good" as far as he knew and did not appear intoxicated. He saw Gann drinking orange juice from a small can. He recalled that a blonde woman spilled a mixed drink on Gann during the evening.

Doctor Dinish Gupta, the defendant's cardiologist, testified that the defendant is on several medications for her coronary artery disease. He opined that these medications would not increase the level of intoxication if ingested with alcohol. However, he testified that nitroglycerin use "may be associated with light-headedness on standing, especially just after rising from recumbent or seated position." Further, this effect may occur more frequently in patients who have consumed alcohol. He admitted that nitroglycerin relaxes the smooth muscle of the heart, but it would not have the same effect on the skeletal muscles. With respect to the defendant's varying signatures, he testified that the nitroglycerin would not account for the decreased legibility of the signature on the jail intake form unless the

**7**

defendant's blood pressure was very low at the time of the signature. He admitted that it was "possible" that the signature appeared as it did due to consumption of a significant amount of an alcoholic beverage.

In rebuttal, the state called Detective Pat Holder of the Tullahoma Police Department. The detective has known the defendant for twenty years. He saw the defendant at The Office in the late evening hours of October 27 or the early morning hours of October 28. She had the odor of alcohol on her breath. Gann told Detective Holder that she was not supposed to drink but in the excitement of the vandalism and a fight she had been drinking. He said Gann "was high and had a buzz on" but was not "falling down drunk." He warned the defendant that she might be arrested if she "got out on the street."

## I

First, the defendant challenges the sufficiency of the convicting evidence on both the DUI and evading arrest convictions. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the

**8**

weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence.  Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978).  On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  Cabbage, 571 S.W.2d at 835.

## A

In pertinent part, driving under the influence is committed where an individual

> drive[s] or [is] in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of this state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while . . . [u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system . . . .

Tenn. Code Ann. § 55-10-401 (1993) (amended 1996).

In the case at bar, the defendant contends the proof of her intoxication is insufficient as a matter of law.  We disagree.  In the light most favorable to the state, the defendant admitted having two mixed drinks, one at her home and one at a restaurant before she went to The Office.  Additionally, she told Detective Holder that she had been drinking in the excitement of the vandalism and a fight at The Office.  Other officers observed Gann with slurred speech and alcohol on her breath.  Moreover, the officers testified that Gann was uncooperative at times and unsteady on her feet.  Her signature made on October 28 was difficult to read, in contrast to a signature made later.  The defendant refused to take an intoximeter

test.[2]  Some of this evidence was unrebutted.  As to the rest, the jury had the prerogative, as the finder of fact, to weigh the evidence and accredit the state's witnesses and discredit the defense witnesses.  We believe a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of driving under the influence.  As such, we find this issue lacking in merit.

**B**

The defendant also challenges the sufficiency of the convicting evidence pertaining to evading arrest.  The evading arrest statute provides in pertinent part, "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop."  Tenn. Code Ann. § 39-16-603(b)(1) (1997).

The defendant challenges only the sufficiency of proof that she acted intentionally with respect to this crime.  As we have often found, intent is properly established by circumstantial evidence.  See, e.g., State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994).  In fact, intent is the element that is most frequently established from circumstantial proof.  See State v. Hall, 490 S.W.2d 495, 496 (Tenn. 1973).  In the light most favorable to the state, Sergeant Alvarez asked Gann to step out of her vehicle, to which she replied "she wasn't going any g.d. place but home."  Whereupon, Gann proceeded to roll up her window and drive off, bumping Alvarez's knee with her car in the process.  Gann then fled from Officer Hayworth for half a mile while Hayworth had the blue lights and siren on his patrol

---

[2]See State v. Morgan, 692 S.W.2d 428, 430 (Tenn. Crim. App. 1995) (defendant's refusal to submit to blood alcohol test held probative of issue of defendant's guilt of DUI when defendant claimed his physical condition was due to pre-existing disability and not alcohol consumption); see also State v. Smith, 681 S.W.2d 569, 570 (Tenn. Crim. App. 1984).

vehicle in operation.[3]   Moreover, Gann made two turns during the course of Hayworth's pursuit of her.  From this evidence, a rational trier of fact, as the jury in this case, could infer that the defendant intentionally engaged in these actions in order to evade arrest by the officials.  Thus, we find the evidence sufficient to sustain the defendant's conviction of evading arrest.

## II

In her second issue, Gann complains of the sentences imposed. Gann received a two-year incarcerative sentence for evading arrest.  She received an eleven month, 29 day sentence for second offense DUI with 180 days to be served in confinement and the balance on probation.

In determining whether the trial court has properly sentenced an individual, this court engages in a de novo review of the record with a presumption that the trial court's determinations were correct.  Tenn. Code Ann. § 40-35-401(d) (1997).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In conducting our de novo review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. §§ 40-35-210(b), 40-35-103(5) (1997); Ashby, 823 S.W.2d at 168.  On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997); Ashby, 823 S.W.2d at 169.

---

[3]See State v. Kerry D. Garfinkle, No. 01C01-9611-CC-00484, slip op. at 5 (Tenn. Crim. App., Nashville, Nov. 7, 1997) (whether defendant convicted of evading arrest saw officer's signals to stop is a question of credibility for the jury).

In her brief, Gann does not contend that the trial court's determination should be stripped of the presumption of correctness. Moreover, we find that the court followed the correct procedure and considered the relevant criteria. Thus, we evaluate the sentences with the presumption intact.

We begin with the facts developed at the sentencing hearing. The state presented testimony from Laura Prosser, a presentence investigator with the Department of Correction. Ms. Prosser recalled that the defendant professed her innocence and desire to appeal. Ms. Prosser did not sense any remorse from the defendant. The defense presented the testimony of Dr. Richard Cribbs, who began treating the defendant in May 1996[4] for depression and anxiety related to the defendant's trial and the possibility of having to serve time in jail or prison. Of the defendant's mental state and his treatment, he opined, "It's been a crisis situation." He has prescribed Valium for the defendant. Gann has told the doctor several times that she would rather commit suicide than go to jail. If she were incarcerated, the defendant would need her medication. A written report from Dr. Cribbs contains the statement, "I feel that this lady would become even more depressed and anxious if she was placed behind bars." As a portion of the presentence report, the court received the defendant's medical records and a letter from Robert M. Canon, M.D., an orthopaedic surgeon, which detailed the defendant's "cervical disc syndrome with associated occipital headaches." Doctor Canon also noted Gann's other medical conditions -- coronary artery disease, hypertensive cardiovascular disease, angina pectoris, supraventricular tachycardia, wide complex tachycardia and hyperlipidemia. Other information in the presentence report includes the defendant's age of 65 years, prior convictions for DUI and public intoxication,

---

[4]The defendant's trial was in June 1996. Doctor Cribbs's testimony was taken in September 1996.

education through the ninth grade plus vocational training as a nurse's aide, and employment caring for a blind and disabled woman.

## A

First, we examine the length of the sentences imposed by the trial court. The court applied three enhancement factors in arriving at Gann's sentences:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . .
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high;
> . . .
> (16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great[.]

Tenn. Code Ann. § 40-35-114(1), (10), (16) (1997). The defendant challenges the application of factors (10) and (16).

Gann's argument with respect to factor (10) is that her behavior in driving away from Sergeant Alvarez while she allegedly was confused did not pose "reasonable risk" to Officer Alvarez. We disagree. As we have previously recognized, enhancement factor (10) may be applied to DUI and evading arrest convictions in appropriate circumstances. See, e.g., State v. Erwin Keith Tinsley, No. 03C01-9608-CC-00305, slip op. at 5, n.2 (Tenn. Crim. App., Knoxville, Sept. 9, 1997) (evading arrest); State v. Wayne L. Hughes, No. 01C01-9502-CC-00033, slip op. at 16 (Tenn. Crim. App., Nashville, June 20, 1996) (opinion on rehearing) (evading arrest), perm. app. denied (Tenn. 1996); State v. Dockery, 917 S.W.2d 258, 263 (Tenn. Crim. App. 1995) (DUI); State v. Dale L. Stewart, No. 03C01-9106-CR-00158, slip op. at 5 (Tenn. Crim. App., Knoxville, Mar. 13, 1992) (DUI).

We find Gann's claim of confusion unpersuasive. The trial court found

**13**

as fact at the sentencing hearing that Gann had been untruthful in this claim. In finding her guilty of evading arrest, the jury made the same finding. More significantly, the facts present a case in which several individuals were endangered by the defendant's drunken driving and evading arrest. The defendant endangered Sergeant Alvarez, who was standing on a roadway directing traffic around a wrecked truck in the early morning. Alvarez was fortunate not to have been hurt severely. Given her erratic driving, the defendant endangered Officer Hayworth and Constable Fowler when her conduct required them to initiate pursuit of her. We believe application of this factor was proper.

Likewise, we find no error in the application of factor (16). This factor is appropriate for DUI and evading arrest convictions where the facts of the case warrant its application. See, e.g., State v. Joseph L. Fletcher, No. 03C01-9606-CC-00229, slip op. at 8 (Tenn. Crim. App., Knoxville, July 9, 1997) (DUI); State v. Kenneth L. Warren, No. 01C01-9605-CC-00218, slip op. at 6-7 (Tenn. Crim. App., Nashville, May 21, 1997) (DUI); Wayne L. Hughes, slip op. at 16 (evading arrest); State v. Dewayne Smith, No. 03C01-9501-CR-00024, slip op. at 9 (Tenn. Crim. App., Knoxville, Sept. 19, 1995) (evading arrest and DUI), perm. app. denied (Tenn. 1996). While exceeding the speed limit, Gann nearly struck a parked police car. She ran a red light. On two separate occasions, she drove on the wrong side of the road. The trial court appropriately found that she committed her crimes under circumstances under which the potential for bodily injury to a victim was great.

The trial court declined to apply any mitigating factors in arriving at Gann's sentence. She claims the court should have mitigated her sentence because of her medical condition, her "criminal conduct neither caused nor threatened serious bodily injury," and "substantial grounds exist tending to excuse or justify [her] criminal conduct, though failing to establish a defense." See Tenn.

**14**

Code Ann. § 40-35-113(1), (3), (13) (1997). Because the trial court appropriately applied enhancement factors (10) and (16), a finding that the defendant's criminal conduct neither caused nor threatened serious bodily injury would be inconsistent. Moreover, we reject the proposition that driving under the influence and evading arrest while driving under the influence do not cause or threaten serious bodily injury. Further, the trial court's decision not to find substantial grounds tending to excuse or justify the defendant's conduct is appropriate because the court found that the defendant was untruthful. This leaves only the question of mitigation based upon the defendant's poor health. Bearing in mind the presumed correctness of the trial court's determination, we do not believe the court erred in declining to find this mitigating factor. See State v. Anthony Raymond Bell, No. 03C01-9503-CR-00070, slip op. at 6 (Tenn. Crim. App., Knoxville, Mar. 11, 1996) (finding ill health an inappropriate mitigating factor but noting it may be an appropriate consideration for alternative sentencing), perm. app. denied (Tenn. 1996).

Evading Arrest

Evading arrest by motor vehicle is a Class E felony. Tenn. Code Ann. § 39-16-603(b)(3) (1997). The sentencing range for a Range I offender such as the defendant is one to two years. Tenn. Code Ann. § 40-35-112(a)(5) (1997). For a felony conviction, the trial court is required to start at the minimum sentence and enhance within the range according to the applicable enhancement factors, then reduce the sentence appropriately for the mitigating factors. Tenn. Code Ann. § 40-35-210(e) (1997).

We find that the defendant has failed to demonstrate that the trial court erred in applying the three enhancement factors and no mitigating factors and arriving at a maximum sentence of two years. Giving due deference to the trial court in reviewing its presumptively correct sentence, we may not alter the

**15**

sentences imposed even if we might have reached a different result.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Driving Under the Influence

For second offense DUI, the sentence imposed may be up to eleven months and 29 days, with a mandatory minimum of 45 days to be served in the county jail.[5]  Tenn. Code Ann. § 55-10-403(a)(1) (Supp. 1996).  Driving under the influence is a Class A misdemeanor.  Tenn. Code Ann. § 55-10-403(m) (Supp. 1996).  As a misdemeanant, the defendant is not entitled to a presumption of the minimum sentence.  State v. Creasy, 885 S.W.2d 829, 832-33 (Tenn. Crim. App. 1994).  Moreover, on a DUI conviction, the defendant may be ordered to serve as much as 100 percent of her sentence in confinement.  See State v. Palmer, 902 S.W.2d 391, 393-94 (Tenn. 1995).

Viewing the applicable enhancement factors and lack of mitigating factors in light of the presumed correctness of the trial court's determination, we believe the trial court was well warranted in its decision to impose a mid-range sentence for DUI.

**B**

Finding no error in the application of enhancement and mitigating factors, the remaining question is whether the manner of service of sentences is appropriate.[6]

---

[5]Second offense DUI also carries a fine of $600 to $3,500.  The defendant has not challenged the $1,700 fine she received.

[6]In her brief, Gann complains of the "long sentence," argues that a "substantially lower sentence" is more appropriate, and characterized the sentence as "excessive," "inappropriate and harsh."  However, she never explicitly devotes argument to alternative sentencing.

**16**

Gann's more serious crime is a Class E felony. She is a Range I offender. Thus, in the absence of evidence she is an offender for whom incarceration is a priority, she is presumed a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997); State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). In such a case, the court must presume that an alternative sentence will result in successful rehabilitation. See Ashby, 823 S.W.2d at 168-69. These presumptions may be overcome, however, by evidence to the contrary. Ashby, 823 S.W.2d at 168-69. Additionally, the defendant is eligible for probation as a form of alternative sentencing.[7] See Tenn. Code Ann. § 40-35-303(a) (1997).

The trial court did not formally designate certain of its findings as applicable to the issue of alternative sentencing. Nevertheless, its findings reflect appraisal of the appropriate considerations. The relevant findings of fact include (1) that the defendant was untruthful, (2) that she exhibited a lack of remorse, and (3) that she had "a history of frequenting beer joints and other establishments where intoxicating liquors are served," referring to evidence offered without objection that the defendant may have an "alcohol problem" as indicated by her past history of being arrested "in bars and such as that where she had been involved in stuff."[8] All of this evidence, particularly when considered in the aggregate, is indicative of the defendant's substandard prospects for rehabilitation. See Tenn. Code Ann. § 40-35-103(5) (1997); State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983)

---

[7]In light of the mandatory minimum 45 days of confinement for second offense DUI, the defendant is not eligible for a completely probated sentence.

[8]This arrest history was elicited from the state's rebuttal witness, a law enforcement officer. When the trial judge inquired at the sentencing about his suspicion that this evidence may illustrate an alcohol problem, Gann's trial counsel conceded "Yes, Your Honor, and perhaps that might be, but that is probably in her younger years and not any time in the recent past." Further, Gann has two previous convictions related to the abuse of alcohol.

(untruthfulness); State v. Pierson, 678 S.W.2d 905 (Tenn. 1984) (remorse); State v. Katherine H. Gallaher, No. 02C01-9508-CC-00248, slip op. at 3-4 (Tenn. Crim. App., Jackson, Sept. 30, 1996) (continued abuse of alcohol), perm. app. denied (Tenn. 1997). A poor rehabilitative outlook is proper grounds for rebuttal of the presumption of favorable candidacy for alternative sentencing. See, e.g., State v. David M. Allen, No. 01C01-9505-CC-00153, slip op. at 6 (Tenn. Crim. App., Nashville, Apr. 26, 1996) (presumption of favorable candidacy for alternative sentencing rebutted in part by evidence of defendant's poor prospect of rehabilitation), perm. app. denied (Tenn. 1996); State v. Joseph L. Powers, No. 02C01-9511-CR-00338, slip op. at 2-3 (Tenn. Crim. App., Jackson, June 28, 1996).

Evading Arrest

In this case, the trial court implicitly found the presumption favoring alternative sentencing rebutted for this defendant on the felony conviction. The record leads us to the conclusion that the court was greatly influenced by its finding that Gann was untruthful about the facts giving rise to the evading arrest conviction. On de novo review with a presumption of correctness, we find that Gann has failed to carry the burden of demonstrating that the sentence imposed was improper.

Driving Under the Influence

Gann received an alternative sentence of split confinement for her misdemeanor DUI conviction. See State v. James A. Howard, No. 03C01-9608-CC-00284, slip op. at 7 (Tenn. Crim. App., Knoxville, Feb. 24, 1997), pet. for perm. app. dismissed (Tenn. 1997); State v. James E. Allred, No. 03C01-9504-CR-00110, slip op. at 2 (Tenn. Crim. App., Knoxville, Mar. 20, 1996); State v. Marjorie Jeanette Sneed, No. 03C01-9410-CR-00369, slip op. at 3 (Tenn. Crim. App., Knoxville, Oct. 17, 1995); Ernest Lee Lands, Jr. v. State, No. 03C01-9404-CR-00145, slip op. at 3 (Tenn. Crim. App., Knoxville, May 19, 1995), perm. app. denied (Tenn. 1995);

**18**

State v. Danny Allison, No. 03C01-9403-CR-00106, slip op. at 3 (Tenn. Crim. App., Knoxville, Mar. 23, 1995); State v. Alvin Lee Lewis, No. 01C01-9404-CC-00125, slip op. at 7-8 (Tenn. Crim. App., Nashville, Mar. 14, 1995), perm. app. denied (Tenn. 1995); see also Tenn. Code Ann. § 40-35-104(c) (1997). Thus, the only complaint the defendant could feasibly have with this sentence is whether she should have been granted a more favorable alternative. As we have previously observed, "we will not second-guess the sentencing decision of the trial court as to the particular alternative chosen unless the record establishes compelling reasons for us to do so." Danny Allison, slip op. at 4. In this case, we are not so compelled, particularly in view of the defendant's poor prospect of rehabilitation.

For the foregoing reasons, we affirm the judgment below.

_____
CURWOOD WITT, JUDGE


_____
GARY R. WADE, JUDGE


_____
WILLIAM M. BARKER, JUDGE