STATE of Tennessee, Appellee,

v.

David A. DOCKERY, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 25, 1995.

N. Reese Bagwell, Clarksville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Nashville, Hunt S. Brown, Assistant Attorney General, Nashville, Patty Shepherd Ramsey, Asst. District Attorney General, Nashville, for Appellee.

## OPINION

WADE, Judge.

The defendant, David A. Dockery, was convicted of driving under the influence, first

offense. The trial court imposed an 11 month, 29 day sentence, with a release eligibility set at 30%. The single issue presented for review is whether the sentence is excessive. We affirm the judgment of the trial court.

The defendant was indicted for vehicular homicide. At trial, it was established that the defendant, an off-duty police officer, had an automobile accident which resulted in the death of his occupant, Elizabeth King. During the course of the evening, the defendant had consumed five or six beers and a shot of Korean whiskey. The defendant had used his position as a police officer to purchase beer at a convenience market after 3:00 A.M., beyond the legal hours for sale. The defendant was driving along the 440 bypass in Nashville, down the ramp of I–24 when he lost control of his vehicle, which flipped several times. The accident caused the death of Ms. King. Some six hours after the accident, the defendant showed a .075 blood alcohol content.

At the conclusion of the proof, the jury found the defendant not guilty of vehicular homicide as a result of driving under the influence but could not reach a unanimous verdict on whether the defendant was guilty of vehicular homicide by reckless driving. The jury did agree that the defendant was guilty of driving under the influence.

In making its ruling, the trial court acknowledged that, while the defendant had been acquitted of the charge of vehicular homicide, a death had nonetheless resulted from the accident. The trial court made general reference to having "considered the mitigating factors as set out in 40–35–113" and "the enhancement factors under 40–35–114." In imposing the 11 month, 29 day sentence, the trial court held that speed and violation of the after hours beer law were sentencing factors which had particular significance. In summary, the trial court recognized that it could not "consider the vehicular homicide since [the defendant] was acquitted of that."

In this appeal, the defendant complains that the trial court failed to specifically consider the enhancement factors offered by the state and "ignored the mitigating factors"

filed on his behalf. He contends that he was entitled to the minimum sentence of two days in jail. The defendant cites *State v. David W. Andrews*, No. 02C01–9201–CC–00024, 1993 WL 8606 (Tenn.Crim.App., at Jackson, January 20, 1993), a case in which the defendant had been acquitted by the jury on a charge of vehicular homicide because alcohol was found not to be the proximate cause of the accident. The sentence for driving under the influence was reduced on appeal because the trial court imposed a "stiff sentence" due to the death of the victim, rejecting the jury's conclusion that the accident was not alcohol related.

■■■ When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991). Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts.

■■ Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210.

Among the factors applicable to the defendant's application for probation, whether im-

mediate or after service of a portion of the sentence, are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. *State v. Grear,* 568 S.W.2d 285 (Tenn.1978), *cert. denied,* 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979).

▮ In misdemeanor sentencing, a separate sentencing hearing is not mandatory (there was one here) but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40–35–302(a). Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. §§ 40–35–104, –117, and 302; *State v. Palmer,* 902 S.W.2d 391, 393 (Tenn.1995). The misdemeanor offender must be sentenced to an authorized determinate sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. Tenn.Code Ann. § 40–35–302(b). Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence. *Palmer,* 902 S.W.2d at 393–94; Tenn.Code Ann. § 40–35–302(d). In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. Tenn.Code Ann. § 40–35–302(d); *see also Palmer,* 902 S.W.2d at 393–94.

▮ Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate. Tenn.Code Ann. § 40–35–302(d). The trial court retains the authority to place the defendant on probation either immediately or after a period of periodic or continuous confinement. Tenn.Code Ann. § 40–35–302(e). The trial court maintains jurisdiction over a defendant placed in jail and may reduce or modify the sentence or place the defendant on probationary supervision. Tenn.Code Ann. § 40–35–314(c). The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction. Tenn.Code Ann. § 40–35–302(f). The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility. The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. *State v. Creasy,* 885 S.W.2d 829, 832 (Tenn. Crim.App.1994).

▮ Here, the state submitted several enhancement factors, some of which may not be considered due to the holding in *Andrews. See also State v. Michael T. Sullivan and Simone T. Summers,* No. 01C01–9302–CR–00053, 1993 WL 532623 (Tenn.Crim.App., at Nashville, December 16, 1993). Moreover, the trial court did not make specific findings on each of the proposed enhancement factors or each of the mitigating factors proposed by the defense. It must do so. Finally, the trial court made a general reference to deterrence as a possible factor as to the length of the sentence. As indicated in *Sullivan,* a finding of deterrence can not be conclusory, but must be supported by proof. *See State v. Ashby,* 823 S.W.2d at 170. Because there is no affirmative showing in the record that the trial court specifically considered all relevant facts and circumstances, as is required by law, the presumption of correctness, for the purposes of this appeal, does not accompany the sentence imposed.

▮ The defendant has no prior criminal record. He is gainfully employed, has family support, claims remorse for his conduct, having apologized to the family in court and having visited the gravesite of Ms. King regularly. He is in good physical condition, graduated from Austin Peay University with a grade point average of 3.65, is now a graduate school student and part-time security guard at a skating rink, and has had advanced training with a variety of law enforcement agencies. Of Korean ancestry, the defendant speaks three languages.

At the time of the accident, the defendant had been off duty for about two months due to a knee injury. At the sentencing hearing, the defendant testified that he had not used

alcohol since the accident and did not intend to. The defendant, who was ordered to do 400 hours of community service as a part of his sentence, expressed a willingness to do so. On administrative leave from the police department without pay, the defendant had utilized his time to work on his master's degree and was near graduation. Several letters supportive of the defendant's general character were filed on his behalf. Chaplain William Ackridge, Jr., a major in the United States Army, testified favorably for the defendant, acknowledging his active participation in the military chapel. The chaplain counselled with the defendant after the accident and found him "very contrite, very sorrowful," "very depressed," and suicidal for a time, just after the accident.

The defendant's co-worker at a part-time job and roommate, Richard Darmohray, confirmed that the defendant had not used alcohol since the accident. He described the defendant as a "thorough and consistent" student in the master's program.

Two law enforcement officers, one with the Clarksville Police and the other with the Metro Nashville Police Department also testified favorably for the defendant. He was described as a dependable, responsible police officer. Family members and residents in his community also made very favorable remarks about the defendant's general character. A neighbor testified that the defendant, who had always been remarkably fit, had lost 20 to 30 pounds since the accident.

Ms. King's twin sister, Angela Powers, described the sense of loss that she and her family had felt. Ms. Powers described how close she had been to her sister during childhood, adolescence, and adulthood. She testified that the defendant, as a police officer, had acted irresponsibly and should be held accountable for having driven while intoxicated and driving at an excessive speed along the interstate. She expressed particular concern over a statement by one witness that the defendant had moved the legs of her dying sister in order to remove beer cans from the interior of the vehicle. She asked that the defendant receive the maximum sentence possible.

In his brief, defense counsel has characterized the defendant as "an ideal, extraordinary, conscientious and productive citizen" and describes this offense as his "sole, isolated and exclusive adverse experience with the laws of this State." From all appearances, each assertion appears to be true. The sister of the victim testified that the defendant, on the night of this incident, was "irresponsible"; she contended that "[h]e of all people should know what the law is and what drunk driving can do." That observation also appears to be true. The defendant was a close friend of Ms. King. He had apparently led an exemplary life until this incident. He has generally done so since that time. But for this unfortunate accident, the defendant would still be employed as a police officer and Ms. King would be alive today. These conflicting concerns, as trial judges must address on a more regular basis, make sentencing in these types of cases particularly difficult.

As indicated, prior legal precedent precludes our consideration of the death of the victim as an enhancement factor. The jury acquitted the defendant on the charge of vehicular homicide as a result of intoxication. In *Andrews,* a panel of this court ruled that the death of an occupant in the vehicle could not be considered to enhance the sentence when the defendant had been acquitted by the jury of vehicular homicide but convicted of driving under the influence. In *Sullivan and Summers,* a separate panel of this court held similarly when the defendant had been acquitted of vehicular homicide by intoxication, convicted of driving under the influence, and the jury was unable to agree on a verdict for a vehicular homicide charge by reckless driving.

There are, however, other considerations in this case. First, the defendant was a police officer. An enhancement factor particularly applicable is that the "defendant abused a position of public ... trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of an offense." Tenn.Code Ann. § 40–35–114(15). The trial court placed significant weight on the fact that the defendant had used his knowledge as a police officer to find

a business willing to sell alcohol beyond the time provided by law. Afterward, the defendant drove under the influence of alcohol. Another enhancement factor is also entitled to considerable weight. The defendant "had no hesitation about committing a crime when the risk to human life was high." Tenn.Code Ann. § 40–35–114(10). There was an occupant in the vehicle. *See State v. Jones,* 883 S.W.2d 597 (Tenn.1994). Obviously, the driving under the influence offense was "committed" when "the potential for bodily injury to a victim was great." Tenn.Code Ann. § 40–35–114(16). Excessive speed was a factor in the accident.

Even if none of the remaining enhancement factors alleged by the state apply, and even if all the mitigating factors claimed by the defendant are meritorious, the great weight attributable to the defendant's violation of the public trust warrants the sentence imposed. Those charged with upholding the principles of the criminal justice system have an onerous duty to the general public. Today there is a heightened sensitivity towards the dangers caused by those who choose to drive under the influence. No one knows that better than the public officials involved in law enforcement.

In our *de novo* review, this court has placed great weight on each of the enhancement factors and particularly great weight on the factor involving the violation of the public trust. A sentence of 11 months and 29 days is appropriate. Despite the excellent background of the defendant and his obvious amenability towards a successful rehabilitation, he must be held accountable for his misconduct through a reasonable period of confinement. The assigned release eligibility of 30% is appropriate.

Accordingly, the judgment is affirmed.

PEAY, J., and REX H. OGLE, Special Judge, concur.