# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 11, 2000

## STATE OF TENNESSEE v. DWANNA L. MASON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-T-396     Frank G. Clement, Jr., Judge**

---

### No. M1999-02535-CCA-R3-CD Filed November 3, 2000

---

The defendant pled guilty in Davidson County Criminal Court to vehicular homicide by reckless conduct, a Class C felony, and four lesser charges against her were dismissed. Her guilty plea was submitted without any agreement of the parties as to length or manner of service of sentence. After a sentencing hearing at which the defendant testified, the trial court sentenced her to five years and six months in continuous confinement. The defendant appeals as of right this sentence. We conclude that the imposition of a sentence of five years and six months was appropriate. We affirm the sentence as to length but modify it to show a period of confinement equal to time already served with the remaining time to be served on probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and CORNELIA A. CLARK, SP.J., joined.

Jeffrey A. DeVasher, Assistant Public Defender (on appeal) and Hollis I. Moore, Jr., Assistant Public Defender (at trial) for the appellant, Dwanna L. Mason

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James Sledge, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Dwanna L. Mason, was charged in a five-count indictment for vehicular homicide, reckless homicide, leaving the scene of a fatal accident without giving information, driving without a license, and driving without a license in her immediate possession. The defendant pled guilty in Davidson County Criminal Court to vehicular homicide by reckless conduct, a Class C felony, and the remaining charges were dismissed. The defendant's plea was a blind plea in that the parties reached no agreement as to the length or manner of service of the sentence to be imposed.

A sentencing hearing was held on October 18, 1999, and the trial court imposed a sentence of five years and six months as a Range I, standard offender with all time to be served in continuous confinement.[1]

In this appeal as of right, the defendant challenges both the length and manner of service of her sentence. After a review of the record, we conclude that the evidence supports the imposition of a sentence of five years and six months, but we modify the sentence to reflect one of split-confinement.

## FACTS

The record showed that on the afternoon of April 4, 1999, the defendant took her mother's car without permission and drove onto Ellington Parkway in Nashville. Crystal Boleyjack, the defendant's best friend, was riding in the car with the defendant. The two were apparently going to visit friends and pick up the defendant's sister from Maplewood High School. Ms. Boleyjack testified that they were anxious to return the car to the defendant's house before the defendant's mother returned. Ms. Boleyjack further testified that the defendant was driving at speeds of ninety-five to one hundred miles per hour. She testified that the defendant regularly drove at high speeds and that she, on this specific occasion, asked the defendant to slow down.

Although there is some controversy as to whose arm hit the gear shift mechanism, apparently both the defendant and Ms. Boleyjack reached to turn up the volume on a CD player, and one of them accidently jarred the gear shift mechanism, causing the car to shift into neutral. The defendant then lost control of the car and struck the victim's van, which was traveling at normal speed ahead of the defendant, causing the van to rotate and flip. The victim's body was ejected from the window of the van, and the victim was crushed as the van rolled over. The victim, David Anderson, was dead at the scene.

The defendant's car came to rest against a chain-link fence at the bottom of an embankment. Ms. Boleyjack testified as to what followed:

> I was getting out of the car and I kept telling her - - at first, I kept telling her, "Come on. Come on. Get out [of] the car," and she was saying that she had to get the key. And it was making a funny noise and I was telling her to hurry up and get out of the car, I thought it was going to blow up, I didn't know. And when we got up the hill, I started crying and I said to her, "He's dead." And I guess she was just - - she was scared. We were both scared and she said, "So? Come on. I wrecked my mom's car. I wrecked my mom's car."

---

[1] The defendant has been in continuous confinement since her arrest on the date of the offense, April 8, 1999.

The defendant and Ms. Boleyjack started walking until they were able to get a ride back to the defendant's mother's house where they both changed clothes and Ms. Boleyjack made phone calls to get someone to come and pick her up. In the meantime, police had traced the owner of the car to the defendant's mother. Officer Mark Wells of the Metropolitan Nashville Police Department, testified at the sentencing hearing that he was dispatched to the residence of the owner or driver of the hit and run vehicle. When he arrived, the defendant and Ms. Boleyjack were "just standing around like they were waiting for something." The defendant told Officer Wells that she had let somebody in the house to use the phone, and that he must have taken the car. The defendant was not able to explain why the keys to the car were in the house. Officer Wells described the defendant's demeanor as indifferent, not upset except about the fact that her mother was going to be mad.

The defendant agreed to return to the scene of the accident with Officer Wells in order that she might assist Sergeant Hagar, who was involved in the on-the-scene investigation. The defendant repeated essentially the same story to Sergeant Hagar, this time naming the person who had used the telephone at her home as "Anthony." The defendant remained at the scene a short while longer until she was asked to go to the traffic office on Harding Place and give a formal statement. This statement directly contradicted the defendant's earlier statements. She now admitted to being the driver but claimed that her passenger, Ms. Boleyjack, had knocked the car into neutral, causing the accident.

The defendant testified in her own behalf at the sentencing hearing. She stated that she was speeding because she had heard that some individual at school was going to "gang" her sister. The defendant claimed that it was the same female she had herself just recently fought with. Ms. Boleyjack knew nothing of the need to rescue the defendant's sister.

## ANALYSIS

### I. Standard of Review

The defendant's first issue involves the actual sentence she received for vehicular homicide, a Class C felony when no intoxication is involved. The sentence range for a Class C felony for a Range I, standard offender is three to six years. The defendant argues that her sentence of five years and six months is excessive.

When a defendant complains of her sentence, we must conduct a *de novo* review with a "presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code. Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event the record fails to demonstrate the appropriate consideration by the trial court, appellate review of the sentence is purely *de novo*. See id. In conducting our *de novo* review, this court looks a second time, after the trial court, at the evidence received at trial and the sentencing hearing if there is any; the presentence

report; the principles of sentencing and arguments as to sentencing alternatives; the nature and characteristics of the criminal conduct involved; any statutory mitigating or enhancement factors; any statement made by the defendant on his or her own behalf; and the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210. The burden of showing that the sentence is improper is on the appealing party. See id. § 40-35-401(d) Sentencing Commission Cmts.

The Sentencing Reform Act of 1989 further provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40-35-209." Tenn. Code Ann. § 40-35-210(f). Such findings by the trial court must be recorded to allow for adequate review on appeal. See State v. Alexander, 957 S.W.2d 1, 5 (Tenn. Crim. App. 1997).

In this case, the trial court apparently found one enhancement and one mitigating factor , but the court failed to specifically enumerate the statutory mitigating and enhancement factors it found applicable. Furthermore, the record does not contain an affirmative showing that the trial court considered the sentencing principles and all relevant facts and circumstances and made sufficient findings in determining the defendant's sentence, particularly as related to alternative sentencing. Therefore, we review the sentencing determinations made by the trial court without any presumption of correctness.

## II. Sentence Length

At the conclusion of the sentencing hearing, the trial court must first determine the appropriate range for the sentence. The trial court must also determine whether there is a presumptive sentence. Where there are both enhancement and mitigating factors, the trial court must "start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). The enhancement factors that the court may consider, if they are not essential elements of the offense as charged in the indictment, are set out in Tennessee Code Annotated Section 40-35-114. These factors are the exclusive ones that may be considered in setting the length of a sentence within a given range. See State v. Dykes, 803 S.W.2d 250, 258 (Tenn. Crim. App.), perm. app. denied (Tenn. 1990).

In this case, the defendant was sentenced as a Range I, standard offender for a Class C felony. The range for her sentence is three to six years. In imposing a sentence of five years and six months, the trial court stated the following:

> Considering the Defendant's record of unlawful activity, her theft
> charges, her dishonest statements, her leaving the scene of the
> accident and then, trying to lie her way out of the responsibility and
> all of the other factors, but also considering her youth, I believe that
> a sentence less than the maximum is required, primarily because of

-4-

her youth, but I believe that it should be a substantial sentence. And, therefore, I'll be imposing a sentence of five and a half years with the correctional authorities and they will determine if and when she's eligible for consideration for release and parole. And for that reason, the sentence will be five and a half years.

The trial court identified only one appropriate enhancement factor as set forth in Tennessee Code Annotated Section 40-35-114: "(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." The defendant has a history of criminal behavior, including the regular use of marijuana since approximately age seventeen. The presentence report reflected that the defendant, as a juvenile, had been charged with unruly behavior for fighting in July of 1998; theft and criminal impersonation in 1998 based on a shoplifting episode at Proffitt's Department Store; running away from home in September of 1998; and shoplifting at Proffitt's, again giving a false name to authorities. Her record of juvenile charges included only one disposition, and that was for the unruly behavior charge on July 13, 1998 where she was "referred to services." The other listed charges are of unknown disposition. The defendant does not contest this record or the application of enhancement factor (1). We conclude that enhancement factor (1) was properly applied to this defendant.

Although the trial court did not address enhancement factor (10), we conclude that it is appropriately applied in this case. That enhancement factor is the following: "The defendant had no hesitation about committing a crime when the risk to human life was high[.]" Tenn. Code Ann. § 40-35-114(10).

This court has previously determined the applicability of factor (10) in cases of vehicular homicide. This enhancement factor should not be applied if the only risk to life was that of the victim. See State v. Norris, 874 S.W.2d 590, 601 (Tenn. Crim. App. 1993). However, when the lives of other people are at risk because of the offense committed by the accused, this factor is applicable. See State v. Dockery, 917 S.W.2d 258, 263 (Tenn. Crim. App. 1995) (applying this factor in a DUI case where there was a passenger in the accused's vehicle). This enhancement factor has been applied in a vehicular homicide case where the defendant had a passenger in his vehicle until the vehicle struck another vehicle. See State v. Shane Wendall Yankee, No. 03C01-9507-CC-00200, 1996 WL 438792, at *5 (Tenn. Crim. App. Aug. 6, 1996 at Knoxville), perm. app. denied (Tenn. Feb. 3, 1997). This court found that "[t]he life of the passenger was at risk due to the manner in which the accused drove his motor vehicle." Id. Here, the defendant drove at speeds in excess of ninety-five miles per hour on a major thoroughfare with a passenger riding in the front seat. We conclude that enhancement factor (10) is appropriately applied to the defendant.

The defendant also contends that the trial court should have given more weight to mitigating factor (6), apparently the only one considered by the trial court. That factor is: "The defendant, because of youth or old age, lacked substantial judgment in committing the offense." Tenn. Code Ann. § 40-35-113(6). The defendant argues that the trial court failed to properly weigh the fact that she was eighteen when the offense was committed; that she was in special education programs in

high school; that her father was incarcerated; that she had been under psychiatric care for a period of two years; and that she was racing to save her younger sister from being assaulted at school. The defendant relies on State v. Carlos D. Haywood, No. 02C01-9707-CR-00289, 1998 WL 855436, at *14 (Tenn. Crim. App. Dec. 11, 1998 at Jackson). In Haywood, a panel of this court found that the defendant's age—fifteen at the time of the offense—contributed to a lack of judgment in the context of the abuse and neglect he suffered during his childhood, including being beaten and burned by his mother so that he would be quiet; his visual handicap, which led to failure in school; his lack of adult supervision because his grandmother, in whose custody he was placed, was also caring for her terminally ill husband. On these facts, mitigating factor (6) should have been given considerable weight.

The record in this case shows that the defendant's mother sought help for her daughter's unruly behavior to no avail. The defendant willfully took her mother's car, apparently on more than one occasion, and drove at excessive speeds. The defendant, although she apparently has the ability to complete her GED, at the time of the sentencing hearing had made no effort to participate in this program. The defendant's claim of racing to save her sister is simply not credible. The facts of this case do not support reliance on Haywood. Mitigating factor (6), although technically applicable, is appropriately afforded little weight.

We conclude that a sentence of five years and six months is proper and is appropriate punishment given the seriousness of the offense.

## II. Continuous Confinement

The defendant contends that the trial court should have placed her on probation following a period of confinement.

The Sentencing Act of 1989 creates a presumption that certain offenders are favorable candidates for alternative sentencing in the absence of evidence to the contrary. See Tenn. Code Ann. § 40-35-102(5)-(6). In State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995), this court clarified that the law in Tennessee is that "[w]here a defendant is entitled to the statutory presumption of alternative sentencing, the State has the burden of overcoming the presumption with evidence to the contrary." The defendant here, although the trial court failed to so find, is entitled to the presumption that she is a favorable candidate for alternative sentencing.[2] The burden, therefore, was on the State to come forward with evidence to rebut this statutory presumption. Evidence sufficient to rebut the presumption is set out in Tennessee Code Annotated Section 40-35-103. That section states the following considerations:

> (1) Sentences involving confinement should be based on the following considerations:

---

[2]The defendant was convicted of a Class C felony, and she does not fall within the parameters of subdivision (5), which describes the cumulative characteristics of felons afforded first priority regarding sentences of incarceration.

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Consideration (A) is not applicable here because this defendant does not possess a "long history of criminal conduct." As to factor (B), the trial court did address the serious circumstances of the offense, including the tragic loss of a productive individual. The State did not present any evidence concerning the need for deterrence. This court has previously found that in cases of vehicular homicide, probation may not be denied based solely on the fact that a death was involved and that a general need for deterrence was present.[3] See Bingham, 910 S.W.2d at 454-55. As to factor (C), there is no evidence that meets this consideration.

The sentencing considerations mandated by the legislature go beyond those included in the above three factors. A trial court should also consider the potential, or lack of potential, of the defendant for rehabilitation. It is well-established that lack of truthfulness is probative of a defendant's prospects for rehabilitation. See United States v. Grayson, 438 U.S. 41, 50-52, 98 S. Ct. 2610, 2616, 57 L. Ed. 2d 582 (1978); State v. Shane Wendall Yankee, No. 03C01-9507-CC-00200, 1996 WL 438792, at *5 (Tenn. Crim. App. Aug. 6, 1996 at Knoxville), perm. app. denied (Tenn. Feb. 3, 1997).

In this case, the defendant lied to police officers on two occasions before coming forward with a version of events closer to the truth. The defendant also pressed Ms. Boleyjack to lie. The fact that the defendant told her best friend nothing about the need to rescue her sister makes that story incredible. The defendant has a history of giving false information to authorities. In addition to this lack of candor, the defendant shows an amazing lack of remorse or ability to take responsibility. According to the presentence report, the officer who interviewed the defendant found her to be distracted and unconcerned, stating the following:

During the interview at CCA subject displayed little interest in the questions and information provided by this officer. She consistently

---

[3]Our supreme court has recently clarified the law concerning the trial court's determination that a need for deterrence exists and that "incarceration appropriately addresses that need." State v. Daryl Hooper, No. M1997-00031-SC-R11-CD, slip op. at 9 (Tenn. Sept. 21, 2000). In this case, the need for deterrence was not addressed.

gazed out the window in the door of the office where [the] interview was conducted, interacting, jestering [sic] and laughing with other inmates passing by in the outside hallway. Also when asked if she went by any other name[,] subject stated "No." However, when this officer asked about the name Latoya Henderson subject responded "Oh, you mean when I was a juvenile."

The defendant, although admittedly "scared," simply walked away from an accident she caused where the victim lay dead on the road. According to evidence, her concern was primarily for her own welfare, fearing her mother's wrath. The defendant had the presence of mind to concoct a story about "Anthony's" taking the car; to change her clothes after the accident to avoid identification; and to wait with Ms. Boleyjack for a ride, possibly planning to get in the car herself and escape questioning.

We agree with the trial court that this defendant's lack of maturity indicates that she does not possess the attributes necessary to rehabilitate herself. Evidence in the record supports this conclusion. We note specifically this defendant's lack of truthfulness, callousness, and inability to appreciate the seriousness of her offense or to take full responsibility. Therefore, we conclude that the evidence supports some period of incarceration, but, as a presumptive candidate for alternative sentencing and a young first-time felony offender, split-confinement is the appropriate sentence.

## CONCLUSION

The defendant's sentence is affirmed as to length but modified as to manner of service. The case is remanded to the trial court for entry of an order sentencing the defendant to a period of incarceration equal to the time she has served with the remainder of her sentence to be served on probation, with appropriate conditions to be established by the trial court.

_____
ALAN E. GLENN, JUDGE