IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JANUARY SESSION, 1999

FILED

May 6, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9801-CR-00037 |
| | ) | |
| Appellee, | ) | DAVIDSON COUNTY |
| | ) | |
| V. | ) | HON. CHERYL BLACKBURN, |
| | ) | JUDGE |
| GEORGE DENNIS FIELDS, | ) | |
| | ) | (SOLICITATION TO COMMIT |
| Appellant. | ) | (FIRST DEGREE MURDER) |

FOR THE APPELLANT:

**KARL DEAN**
District Public Defender

**JEFFREY A. DeVASHER**
Assistant Public Defender
(On Appeal)

**RICHARD TENNENT**
Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201
(At Trial)

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TIMOTHY BEHAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**ELIZABETH T. RYAN**
Assistant Attorney General

**VICTOR S. JOHNSON, III**
District Attorney General

**ROGER MOORE**
Assistant District Attorney General
Washington Square, Suite 500
222 2nd Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED AS MODIFIED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, George Dennis Fields, appeals as of right following his sentencing in the Davidson County Criminal Court. Defendant pled guilty to solicitation to commit first degree murder. No agreement was determined as to the length or manner of service of the sentence. The trial court sentenced Defendant as a Range I Standard Offender to eleven (11) years of incarceration. Defendant filed a timely notice of appeal. Subsequently, Defendant timely filed a motion for reduction of his sentence pursuant to Rule 35(b) of the Tennessee Rules of Criminal Procedure. Following the denial of this motion, Defendant filed a separate appeal. Both appeals were consolidated by order of this court. We affirm the judgment of the trial court.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment.

Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The State summarized its proof at the guilty plea hearing as follows:

> . . . [P]rior to August 29, 1996, Deputy Mike Watson of the Sumner County Sheriff's Department received information from an informant, an individual, actually, it was Butch Vaughn, to the effect that he had been contacted or had conversation with this Defendant about a possible hit; that is, a solicitation to commit murder, the victim being a Mr. Paul Martin. Deputy Watson contacted agents of the Tennessee Bureau of Investigation and Agent Richard Stout, who is present here today, was assigned to the case.
>
> They arranged for another agent, Joe Copeland, to play the part of a hit man, and arrangements were made to meet with the Defendant, Mr. Fields, on August 29, 1996; that meeting took place at the Knight's Inn on Trinity Lane, here in Davidson County, Tennessee . . and the meeting was videotaped. Present in the room were the undercover agent, Mr. Copeland, Butch Vaughn, and the Defendant, and during the course of the recording, the discussion was made to have Mr. Martin killed. Finances were discussed. Mr. Fields left the first meeting and returned at approximately 12:30 p.m., and again, all this is on videotape; counted out or paid a thousand dollars ($1,000.00) as down payment on the contract with Mr. Copeland, who, again, was posing as the hit man. Mr. Fields was arrested at that time.

Videotapes and audiotapes of telephone conversations between the Defendant, Copeland, and Vaughn were also admitted into evidence.

The Defendant's proof at the sentencing hearing consisted of several character witnesses. Leslie Cunningham Greer testified that she had known the Defendant for twenty (20) years, first meeting him when he was a police officer in Fairview. She described the Defendant as a good friend and father, however he did become depressed in the summer of 1996 due to his marital problems. Defendant was distressed because his wife had left him for another man and had taken their son with her. As a result, the Defendant was not sleeping or eating, and he was not

thinking rationally. Recently, Greer had seen an improvement in the Defendant's mental health.

Cathy DeMartelli met the Defendant in 1981 while he served as a police officer. DeMartelli is legally blind and she had been assisted on several occasions by the Defendant. She described the relationship between the Defendant and his son as "about the closest father and son I have seen." DeMartelli did not believe Defendant would break the law unless the situation was "life or death."

Linda Mallory stated she had known the Defendant for twenty-five (25) years through their work in law enforcement. Defendant was "one of the best" police officers she had ever known. Mallory recalled that the victim, Paul Martin, telephoned the Belle Meade Police Department on one occasion while she was working as dispatcher. Martin advised her to tell Defendant that Martin was on his way to the police station and that he intended to kill the Defendant by "putting a bullet right between his eyes." Mallory further described some recordings of telephone conversations made by the Defendant of calls made by Martin to him. During these phone calls, Martin told Defendant that, "I've got your wife. I've got your child. I'm going to get your home and I'm going to get your job."

Mallory also described the depression Defendant suffered following the separation from his family, losing forty (40) to fifty (50) pounds during the summer of 1996. While the Defendant stated that he hated Martin and wished he were dead, she believed the Defendant "just broke" and "lost it mentally" when he solicited someone to kill Martin.

Jo Ann Sloan, next-door neighbor to the Defendant, described Defendant as a good neighbor and noted an incident wherein the Defendant had captured a man who was burglarizing her home. Sloan also knows the victim, Paul Martin, and she described him as someone who uses and sells drugs. Sloan notified Defendant of Martin's drug involvement when his wife and child moved in with Martin.

Edward DeMartelli met the Defendant while he served as a police officer and they eventually became friends. He described various acts of kindness toward his mother by Defendant. While Defendant was devastated by the loss of his job as a police officer following his arrest, Defendant had regained control of his life since he reconciled with his wife.

Defendant's wife, Deborah Fields, testified that they had been married for ten (10) years and that he was "a very good husband." However, they did encounter marital difficulties in the spring of 1996, leading to her moving into the home of Paul Martin. Martin was providing Deborah Fields with marijuana. The Defendant was only allowed to see his son on one (1) occasion between late June and August 29, 1996. Fields overheard Martin advise the Defendant on several occasions over the telephone that he had taken the Defendant's wife and son and was planning to take his house and job as well. She knew that Defendant was emotionally devastated by losing her and their son during that summer.

Deborah Fields testified that she is not able to work outside of the home as she cares for her invalid stepfather, and that Defendant must work to support them all. Since their reconciliation, Martin has continued to call her and threatened to have the Defendant imprisoned because she left Martin. Furthermore, if the

Defendant was not imprisoned, Martin advised her that he would "take care" of the Defendant himself.

Defendant testified that at the time of the offense, he hated the victim because the victim had taken everything away from him in life that was important. During this period he wished Martin were dead, and he lost more than sixty (60) pounds. Defendant met Butch Vaughn while Vaughn was renovating a house in Belle Meade. He told Vaughn about his marital problems and asked Vaughn for assistance in discovering where Martin was selling drugs on Dickerson Road. Two (2) months later, Vaughn called Defendant and stated, "I've got someone to take care of your problem." While Defendant claimed he thought this meant that Vaughn had located a confidential informant who would buy drugs from Martin, he acknowledged that he later met with Vaughn and an undercover agent and agreed to pay $1,000.00 to have Martin killed. Defendant admitted he was ashamed of his actions.

Defendant was working for CSX Railroad at the time of the sentencing hearing and worked as much as he was allowed. He served in the Vietnam War and was injured during that time. Defendant requested alternative sentencing so that he could be a father to his son and because his status as a former police officer subjected him to possible physical attacks by other inmates.

The trial court sentenced Defendant to serve eleven (11) years in the Tennessee Department of Correction. After considering each relevant sentencing factor, including statutory law, the facts and circumstances of the case, the presentence report and arguments as to sentencing alternatives, the trial court went through the applicable mitigating and enhancement factors. First, the trial court

found that enhancement factor (1) applied as Defendant had a previous history of criminal behavior in addition to that necessary to establish his sentencing range. Tenn. Code Ann. § 40-35-114(1). The trial court based this upon Defendant's admission on the audiotapes wherein Defendant described the fight he had with Martin while Martin asserted that Defendant held a gun to his head. In addition, recordings of later telephone conversations Defendant had after he was arrested in this case and was released on bond demonstrated that he was still seeking to have Martin killed. Also, there is testimony in the record by the investigating TBI agent that Defendant desired to have Butch Vaughn, the original informant, killed after Defendant's arrest.

The trial court found that factor (9) applied because Defendant possessed a handgun during the commission of his offense. The trial court also noted that the Defendant discussed having another handgun which he offered to use as part of the payment for the contract to kill Mr. Martin. In addition to his verbal admonition that he was carrying his police gun, the gun is evident in the videotape showing Defendant soliciting the murder of Paul Martin. Finally, the trial court applied factor (15) in that the Defendant abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense. The trial court based this abuse of trust upon Defendant's status as a police officer and relied upon State v. Dockery, 917 S.W.2d 258 (Tenn. Crim. App. 1995) *overruled on other grounds by* State v. Troutman, 979 S.W.2d 271 (Tenn. 1998).

In finding that enhancement factor (15) applied, the trial court stated as follows:

Factor number fifteen does apply, in that the defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense. It is clear from the case law in this state that a police officer is in a position of public trust, and when he violates the law, this factor can be used, and I cite for authority, State v. Dockery, which is found at 917 S.W.2d 258, a case that arose out of Davidson County where a police officer was charged with DUI, and clearly, his position of public trust was used to enhance the sentence in that case. It can be used here.

In addition, there was testimony replete throughout the sentencing hearing that the defendant was, *I assume*, a role model for young children as a police officer. People looked up to him, trusted him. He was in a position of public trust. The public trusted him to have a weapon. He had it with him when he solicited someone to kill another person. Mr. Fields knew what the procedures were. If there is violations of the law, if there are threats, if there are matters involving your family that can't be handled, you go to the authorities. You hire lawyers. You call the police. You do not hire other people to kill other people, and factor number fifteen does apply.

(Emphasis added).

The trial court reviewed the mitigating factors which Defendant asserted were applicable, but she found that the only one applicable was factor (13). The trial court cited the Defendant's service in the military, his heart condition, and the great deal of support he had from his family as "catchall" mitigating factors which applied.

The Defendant argues that the trial court erred in applying factors (1), (9), and (15) of Tennessee Code Annotated section 40-35-114. Defendant asserts that factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior, is typically applied where a defendant has an extensive criminal record. Also, Defendant cites the case of State v. Marshall, 870 S.W.2d 532, 541-42 (Tenn. Crim. App. 1993), for the proposition that an arrest or charge is not considered evidence of the commission of the crime. While we agree that a mere arrest is not evidence of proof of criminal behavior as stated in Marshall and State

v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990), there was more than evidence of arrests as proof of Defendant's criminal behavior. In addition to Defendant's own description of his assault upon the victim, audiotapes of telephone conversations were also entered as proof of Defendant's continued criminal behavior in attempting to solicit someone to kill the victim. As aptly stated by a panel of this court, the rule in Marshall prohibits the use of arrest records to enhance a defendant's sentence, but in this case, however, the testimony of witnesses went further than mere arrest records to demonstrate the Defendant's prior criminal behavior. See State v. Ted Norris, No. 03C01-9606-CC-00212, slip op. at 5, Scott County (Tenn. Crim. App., at Knoxville, December 9, 1997), perm. app. denied (Tenn. 1998).

Defendant further argues that factor (9), that the Defendant possessed or employed a firearm during the commission of the offense, should not have been applied by the trial court. He asserts that nothing in the record suggests that the gun had any connection to the offense for which he was convicted. Defendant cites an opinion by a panel of this court in which the court held that "the facts must show some reasonable connection between the defendant's conduct or state of mind and the firearm" if the enhancement factor in question is to be applied. State v. Johnnie M. Burns, No. 1, slip op. at 3, Obion County (Tenn. Crim. App., at Jackson, January 6, 1988), perm. app. denied (Tenn. 1988). However, as the trial court noted, the Defendant made reference to another handgun he owned which he offered to use as partial payment for the solicitation of the murder.

A more recent opinion of this court held that factor (9) only requires a showing that the defendant possessed or employed a firearm . . . during the commission of

the offense." State v. Johnny Wayne Tillery, No. 01C01-9506-CC-00182, Giles County (Tenn. Crim. App., at Nashville, March 30, 1998), perm. app. denied (Tenn. 1998). In Tillery, the court reasoned that the weapons were confiscated from the same room where cocaine was found and that, under those circumstances, a reasonable connection between the defendant's involvement in the commission of crime and the possession of the firearm was made. Id., slip op at 19. Similarly, a reasonable connection can be made from the Defendant's possession of a handgun in his vehicle at the motel during the commission of the offense and he offered the handgun as partial payment for the killing of Martin.

The Defendant contends that the trial court's application of factor (15), that he abused a position of public trust or used a special skill in a manner that significantly facilitated the commission or the fulfillment of an offense, was in error. There is no question that Defendant, at the time of the offense, held a position of public trust as a police officer. However, we respectfully disagree with the trial court's analysis of State v. Dockery, 917 S.W.2d at 262, and her application of factor (15). The pertinent requirement for application of (15) is that the Defendant "abused" the position of public or private trust. This requires more proof than the fact that a defendant holds a position of public or private trust at the time he or she commits a criminal offense. Dockery is not in conflict with this reasoning. In Dockery, our court noted that the trial court had appropriately placed considerable weight to enhancement factor number (15), where the Defendant, an off-duty police officer had "used his knowledge as a police officer to find a business willing to sell alcohol beyond the time provided by law." Dockery, at 262-63. (Emphasis added).

-10-

In her findings at the conclusion of the sentencing hearing, as quoted above, the trial court did not specify any particular proof in the record showing how the Defendant in this case used his particular knowledge or skill as a police officer to commit this offense. We have carefully reviewed the record, including the audio-visual tape of the Defendant committing the offense, and we are unable to find anything in the record where the State was able to prove that Defendant used his position as a police officer to commit the offense.

Thus, we conclude that enhancement factor (15) is not applicable in this case. In applying enhancement and mitigating factors in order to sentence Defendant, the trial court stated as follows:

> I find, even though I found factors one, nine, and fifteen, I'm not going to give much weight at all to factor number nine [possession or employment of firearm], some weight to factor number one; however, the greatest weight I'm giving is to factor number fifteen, and that is the fact that Mr. Fields was a police officer who was in a position of public trust. He was a role model to young children, and to suggest that he has suffered enough is just not appropriate under these circumstances. . . .
>
> Though I have considered the factors, the enhancing factors or the mitigating factors, I'm going to enhance your sentence to twelve years. I'll reduce it by one year to eleven years, based on your prior history.

It is obvious from the record that the trial court gave considerable weight to this factor (15) in reaching a sentence of eleven (11) years. However, under our de novo review, we disagree with the weight given to factor (9) by the trial court. The Defendant anticipated using a firearm as part of the payment to a person who he believed to be a professional killer. We feel that some additional weight should be attached to enhancement factor (9). Therefore, taking into consideration that factor (15) was erroneously applied, but that factor (9) was not given the appropriate weight

-11-

by the trial court, we modify the sentence to ten (10) years incarceration in the Department of Correction.

In his motion for reduction of sentence, Defendant argued that there is sufficient evidence that Defendant was suffering from a mental condition that significantly reduced his culpability for the offense such that mitigating factor (8) of Tennessee Code Annotated section 40-35-113 should have been applied. In the language of the motion and at the hearing, the Defendant argued that this evidence of a psychological test report prepared by a clinical psychologist was not discovered until after the sentencing hearing. The report reflects a finding that the Defendant suffers from "borderline psychosis with antisocial tendencies."

A sentence may only be modified under Rule 35(b) of the Tennessee Rules of Criminal Procedure by the trial court where "an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35(b), Committee Comments. The trial court considered the written report of Joan Schleicher regarding the Defendant's mental state, but it was not persuaded that this evidence could not have been presented at the prior sentencing hearing. At the hearing, Defendant's counsel explained that Defendant's daughter knew of the Defendant's prior diagnosis concerning his mental state and had provided the information to prior counsel. However, for some reason unknown to current counsel, this information was not passed on to him by the former counsel. In addition, while Defendant had undergone a brief mental health evaluation prior to his sentencing hearing in which Defendant was determined to have "inadequate personality," Defendant did not have the monetary funds to secure further mental testing prior to the sentencing hearing. The trial court found that the Defendant "had ample opportunity to obtain and

present evidence of his mental state before the original sentencing hearing and that the interests of justice do not require a reduction in sentence in this case."

The standard of review for a Rule 35(b) motion is whether the trial court has abused its discretion. State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993). There is nothing in the record to indicate that the trial court abused its discretion in denying the motion to reduce the sentence pursuant to Rule 35(b). This issue is, therefore, without merit.

Finally, we address the Defendant's contention that he should have been granted an alternative sentence. Defendant argues that since the trial court misapplied three (3) enhancement factors, the sentence of eleven (11) years was excessive and a sentence of eight (8) years is appropriate. A defendant who receives a sentence a eight (8) years or less, except for certain offenses, is eligible for probation. Tenn. Code Ann. § 40-35-303(a). However, in spite of Defendant's arguments, this court has upheld the findings of the trial court as to the application of two (2) enhancement factors, factors (1) and (9) of Tennessee Code Annotated section 40-35-114. Even though Defendant's sentence has been modified to ten (10) years, he is still ineligible for any type of probation, including split confinement, which he specifically requests on appeal. This issue is without merit.

The sentence of Defendant is modified to ten (10) years in the Tennessee Department of Correction.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOHN H. PEAY, Judge


_____
DAVID H. WELLES, Judge